AMERICAN BANK & TRUST COMPANY, by the FEDERAL DEPOSIT INSURANCE CORPORATION, Receiver Appointed by the Superintendent of Banks of the State of New York, et al., Appellants, v JAMES KOPLIK et al., Respondents.

First Department, June 22, 1982

### APPEARANCES OF COUNSEL

*Donald S. Zakarin* of counsel (*James A. Janowitz* and *Arthur F. Engoron* with him on the brief; *Pryor, Cashman, Sherman & Flynn,* attorneys), for appellants.

*David I. Korngut* of counsel (*Beal Kagan Lentz & Romash, P. C.,* attorneys), for respondents.

### OPINION OF THE COURT

SULLIVAN, J.

Federal Deposit Insurance Company, as receiver of American Bank and Trust Company, and individually under a loan security agreement, appeals from an order denying its motion for summary judgment in lieu of a complaint (CPLR 3213) based upon a written guarantee.

On or about August 27, 1976, as part of a loan transaction in which American Bank advanced $50,000 to Casual Citchen Corporation, Casual's principals, defendants James Koplik and Sheldon Finkle, executed separate, but identical, irrevocable and unconditional guarantees of full

payment of all of Casual's obligations to American. In consideration for the loan, which was for the purchase of restaurant equipment, Casual executed a $50,000 interest-bearing promissory note payable to American Bank's order in 24 successive monthly installments, commencing October 1, 1976. The guarantees provided that American could, without notice to defendants, change the terms of payment of the underlying obligation, including the manner and time of payment, without releasing them from their obligations. Under the agreement defendants waived notice of nonpayment of any underlying obligation and default.

The guarantees further provide that "[n]o invalidity, irregularity or unenforceability of the liabilities hereby guaranteed shall affect, impair, or be a defense to this guaranty and this guaranty is a primary obligation of the [guarantors]." They also provide that "[n]o delay on the part of [American Bank] in exercising any of its rights (including those hereunder) * * * and no action or nonaction by [American Bank], with or without notice to the [guarantors] * * * shall constitute a waiver of any rights or shall affect or impair this guaranty." The guarantees recite that the rights of the parties are governed by the law of the State of New York.

In December of 1976, Casual sold its interest in the restaurant to Kevin Bagel Corporation; as part of the consideration Kevin assumed Casual's loan obligation to American Bank. In the interim, on September 15, 1976, the Superintendent of Banks of the State of New York had taken over American Bank and appointed Federal Deposit as receiver. Eventually Kevin sold its interest in the restaurant to FJR Fast Foods, Inc., and the equipment was moved to a new location.

On February 1, 1979, almost two and one-half years after the original loan and in anticipation of the opening of the new restaurant, Federal Deposit, Kevin and FJR entered into a written agreement in which Kevin and FJR, as Casual's successors in interest, "acknowledged their joint and several liability for [Casual's] obligation", which was then in default, and agreed to pay $7,000 to Federal Deposit simultaneously with the execution of the agreement and $2,000 additionally each month plus interest on

the declining unpaid balance, commencing April 1, 1979 and for each succeeding month thereafter until the total indebtedness, then $44,905.36, was satisfied.

Aside from the $7,000 paid at the time of the execution of the February 1, 1979 agreement, neither Kevin nor FJR made any further payments. No other payments on account of principal or interest have been made towards Casual's debt since that date, as of which $15,887.22 had been paid. Federal Deposit claims a balance due of $34,112.78, plus interest arrears of $1,792.58 through February 1, 1979, in addition to interest upon the principal from February 1, 1979 to the date of full payment, together with reasonable attorneys' fees incurred in enforcing the guarantees, as provided therein.

In opposing the motion for summary judgment defendants did not deny Casual's obligation or the lack of payment. Instead, they argued, *inter alia,* that the agreement of February 1, 1979 between Federal Deposit, Kevin and FJR constituted an accord and satisfaction which extinguished the original obligation. In denying the motion Special Term found an issue of fact as to "whether it was intended that the agreement of February [1], 1979 was an accord and satisfaction of [the] original obligation so as to release defendants from their obligations under the guarantees." The order should be reversed and summary judgment awarded.

The February 1, 1979 agreement did not have any effect on defendants' obligations under the guarantees other than to extend the time for payment of the existing underlying obligation. By the express terms of the guarantees American Bank, and in turn its receiver, Federal Deposit, without notice to the guarantors and without relinquishing its rights against them, could "change the manner * * * or terms of payment and/or change or extend the time of payment of, renew or alter any liability of [Casual] hereby guaranteed * * * and the guaranty herein made shall apply to the liabilities of [Casual], changed, extended, renewed or altered in any manner".

In construing similar guarantees, the courts of this State have held that guarantors are bound to satisfy the underlying obligations in spite of modifications to those obliga-

tions. For instance, in *National Bank of North Amer. v Sobel* (31 AD2d 750, 751), on facts strikingly similar to those here, the court held that the defendant was liable on his guarantee of a promissory note, even though the obligee bank, without his knowledge or consent, had subsequently entered into a modification and extension of the note, since the agreement involved authorized the bank, without notice to him or the obligor " 'to modify or otherwise change any terms of all or any part of the Liabilities * * * [and] to grant any extension or renewal thereof' ". (See, also, *Franklin Nat. Bank v Skeist,* 49 AD2d 215, 220; *American Bank & Trust Co. v Collector's Guild,* NYLJ, Jan. 29, 1982, p 4, col 4.)

Considered in a light most favorable to defendants, the February 1, 1979 agreement was, at best, an executory accord, and not a novation, since only performance of the new promise would discharge Casual's obligation. (See *Moers v Moers,* 229 NY 294.) In a novation, the existing obligation is extinguished by the acceptance of a new promise in satisfaction of the original obligation. (See *Ostrander v Ostrander,* 199 App Div 437.) "Generally, it is assumed that one does not surrender an existing obligation for a promise to perform in the future" (*Goldbard v Empire State Mut. Life Ins. Co.,* 5 AD2d 230, 236, citing *Moers v Moers,* 229 NY 294, 300). "It is generally more reasonable to suppose that [one surrenders] his old rights only when the new contract of accord [is] performed." (6 Williston, Contracts [rev ed], § 1847.)

Even if the agreement constituted an executory accord, however, defendants' obligations as guarantors have not been discharged, since the accord was never satisfied. Subdivision 1 of section 15-501 of the General Obligations Law defines an executory accord as "an agreement embodying a promise express or implied to accept at some future time a stipulated performance in satisfaction or discharge in whole or in part of any present claim, cause of action, contract, [or] obligation * * * and a promise express or implied to render such performance in satisfaction or in discharge of such claim, cause of action, contract, [or] obligation". Under subdivision 3 of section 15-501 of the General Obligations Law "[i]f an executory accord is not

performed according to its terms by one party, the other party shall be entitled either to assert his rights under the claim, cause of action, contract, [or] obligation * * * which is the subject of the accord, or to assert his right under the accord."

In *Loblaw, Inc. v Wylie* (50 AD2d 4), the court, in rejecting the defendant's assertion that the claim was barred by an accord and satisfaction, held that "an accord, when followed by a satisfaction, is a bar to the assertion of the original claim; however, unless so followed by a satisfaction, it has no effect." (*Loblaw, Inc. v Wylie, supra,* at p 8, citing 1 NY Jur, Accord and Satisfaction, § 1; *Reilly v Barrett,* 220 NY 170; *Plant City Steel Corp. v National Mach. Exch.,* 23 NY2d 472; *Goldbard v Empire State Mut. Life Ins. Co.,* 5 AD2d 230.) If an executory accord "remains unperformed, the promisee may elect to sue on the accord or the original obligation." (*Albert v City of New York,* 101 Misc 2d 356, 365.) Here, the February 1, 1979 agreement was not "performed according to its terms" (General Obligations Law, § 15-501, subd 3), inasmuch as only the initial $7,000 payment was made. Since the accord was never satisfied, Federal Deposit, as American Bank's receiver, retained its rights against defendants under their unlimited guarantees. (General Obligations Law, § 15-501, subd 3; *Loblaw, Inc. v Wylie,* 50 AD2d 4, *supra.*)

The modification in the terms of payment of Casual's obligation would have inured to defendants' benefit had Kevin and FJR made the payments pursuant to the February 1, 1979 agreement. But that agreement was never satisfied. Defendants cannot escape liability simply because an accord was executed.

Accordingly, the order, Supreme Court, New York County (KLEIN, J.), entered March 4, 1981, which denied plaintiffs' motion for summary judgment, should be reversed, on the law, without costs or disbursements, the motion granted, and the matter remanded for a hearing to compute interest and counsel fees.

KUPFERMAN, J. P., SANDLER, BLOOM and ASCH, JJ., concur.

Order, Supreme Court, New York County, entered on March 4, 1981, unanimously reversed, on the law, without

costs and without disbursements, plaintiffs' motion for summary judgment granted and the matter remanded for a hearing to compute interest and counsel fees.