1 F.3d 138
 MAY DEPARTMENT STORES COMPANY, doing business as Venture
Stores, Plaintiff-Appellant,
v.
INTERNATIONAL LEASING CORP., INC., and Arnold Frumin,
Defendants-Third-Party-Plaintiffs-Appellees,
Willing Group, Inc., and Louis Goldstein, Third-Party-Defendants.
 No. 1630, Docket No. 93-7106.
 United States Court of Appeals,
Second Circuit.
 Argued June 17, 1993.
Decided Aug. 3, 1993.
 
 Warren S. Landau, Smithtown, NY (David M. Ardam, Spada, Ardam, & Ershowsky, P.C., Smithtown, NY, of counsel), for plaintiff-appellant.
 William J. Coury, Brooklyn, NY (Samuel L. Hagan, Hagan, Poch & Coury, of counsel), for defendants-third-party-plaintiffs-appellees.
 Before: KEARSE, MINER and ALTIMARI, Circuit Judges.
 MINER, Circuit Judge:
 
 
 1
 Plaintiff-appellant May Department Stores Company ("May") brought this diversity action in June of 1988, in the United States District Court for the Southern District of New York (Haight, J.), against defendant-third-party-plaintiff-appellee International Leasing Corp., Inc. ("ILC") for breach of contract and against defendant-third-party-plaintiff-appellee Arnold Frumin for fraud. The gravamen of May's complaint was that ILC delivered less than the quantity of "Fruit of the Loom" men's underwear specified in a sales contract it entered into with May and that Frumin (ILC's vice president) had misrepresented to May that ILC could provide the quantity of underwear required by May in order to induce May to enter into the sales contract.
 
 
 2
 After discovery had been completed, both parties moved for summary judgment. In their motion for summary judgment, the defendants raised for the first time the affirmative defense of accord and satisfaction. In a Memorandum Opinion and Order dated December 28, 1992, the district court dismissed May's complaint and directed the entry of summary judgment for the defendants. The district court found that a settlement agreement sent by ILC to May was an accord and that May's unconditional negotiation of a check accompanying the settlement agreement was a satisfaction of the accord that served to extinguish any liability on the original sales contract. For the reasons set forth below, we hold that ILC failed to satisfy the elements of an accord and satisfaction and remand the case to the district court to determine what effect, if any, the settlement agreement had on the defendants' liability under the original sales contract.
 
 BACKGROUND
 
 3
 In April of 1987, ILC entered into a sales contract to provide May with Fruit of the Loom men's underwear. Acting in accordance with the custom and usage of the underwear trade, May ordered the underwear in packages of three ("three-packs"): 6624 dozen three-packs of men's briefs; 3312 dozen three-packs of men's crew neck T-shirts; and 3312 dozen three-packs of men's V-neck T-shirts. The total contract price was $462,620.16. ILC, through an intermediary, purchased the underwear from third-party-defendants The Willing Group, Inc. and Louis Goldstein (collectively, "Willing"), which had acquired the underwear from Thomas Hoar, Inc., a distributor for Fruit of the Loom.
 
 
 4
 The underwear was delivered in two shipments during the first week of May 1987. Apparently, May's purchase order was misconstrued by someone in the distribution chain as a request for individual pieces of underwear rather than for three-packs of underwear. Consequently, May received only one-third of the quantity of underwear it ordered.
 
 
 5
 The parties disagree as to when May notified ILC of its dissatisfaction with ILC's performance and as to what assurances, if any, Frumin gave to May. May claimed that it immediately telephoned ILC to complain about the shortage and that Frumin assured May that the missing underwear would be shipped. Frumin denies making any assurances, and ILC claims that on May 19, May gave ILC notice that May had inspected the underwear shipment and found it to be satisfactory. On May 22, May authorized its bank to pay ILC the purchase price in full, pursuant to a letter of credit. ILC further claims that May did not orally notify ILC of the shortage until May 26 and did not provide written notification until July 2, 1987.
 
 
 6
 In an attempt to resolve the dispute without conceding liability, ILC drafted a settlement proposal and sent it (unsigned) to May in early August of 1987. Upon receiving ILC's settlement proposal, May made several revisions, signed it and returned it to ILC on August 5. On August 14, ILC prepared a new settlement proposal (the "Settlement Agreement") that adopted all but one of May's proposed revisions, signed it and returned it to May, together with a check for $135,000.
 
 
 7
 The Settlement Agreement and check were accompanied by a cover letter, which stated: "Enclosed please find my check for $135,000 dollars [sic] as well as the signed agreement concerning Fruit of the Loom." The Settlement Agreement contained the following preface: "Without in any way addressing the issue of anyone's liability or fault but rather for the sole purpose of arriving at a mutually satisfactory resolution of our outstanding difference...." The Settlement Agreement provided that ILC immediately tender a check in the amount of $135,000 to May; that ILC tender a check to May in the amount of $35,000 within sixty days, on the condition that ILC first could obtain $35,000 from Willing; that the outstanding balance would be repaid through ILC's sale of discounted merchandise to May in future business transactions between the two parties; that, if after two years the outstanding balance remained unpaid, ILC would issue a check to May for twenty-five percent of the unpaid balance; and that May was not obligated to buy any discounted merchandise from ILC but was only required to consider, in good faith, offers made by ILC.
 
 
 8
 After receiving the Settlement Agreement and the $135,000 check, May unconditionally negotiated the check but never signed the Settlement Agreement. ILC never recovered any money from Willing and therefore never issued a second check to May for $35,000 as provided in the agreement. There is no evidence that the two parties have transacted any business since May negotiated the check, although ILC submitted evidence that it made offers to sell certain products to May at a discount.
 
 
 9
 In its complaint, May alleges that ILC breached the contract of sale by failing to deliver the quantity of underwear specified in the contract and that Frumin committed fraud by knowingly misrepresenting ILC's ability to provide the quantity of underwear requested in order to induce May to enter into the contract. In its answer, ILC raised three affirmative defenses: (1) that May failed to state a cause of action; (2) that the contract of sale was unenforceable because it failed adequately to specify the quantity of underwear; and (3) that May had failed timely to notify ILC of a defect in performance.
 
 
 10
 On January 6, 1992, ILC moved for summary judgment and, for the first time, raised the affirmative defense that the Settlement Agreement was an accord and that May's unconditional negotiation of the $135,000 check was a satisfaction of the accord and therefore extinguished any liability arising out of the original sales contract. On January 23, 1992, May responded to ILC's summary judgment motion, arguing that ILC had failed to prove the elements of an accord and satisfaction. On January 5, 1993, the district court entered judgment for ILC, finding that, as a matter of New York law, the Settlement Agreement was an accord that was satisfied by May's unconditional negotiation of the check. This appeal followed.
 
 DISCUSSION
 1. Breach of Contract
 
 11
 "On appeal of a grant of summary judgment, we determine de novo whether there is a genuine issue of material fact and whether the moving party properly was entitled to judgment as a matter of law." Healy v. Rich Prods. Corp., 981 F.2d 68, 72 (2d Cir.1992). The district court granted summary judgment for ILC on May's breach of contract claim upon a finding that the Settlement Agreement was an accord that was satisfied by May's unconditional negotiation of the check accompanying the agreement. According to the law of New York:
 
 
 12
 An agreement of one party to give, and another party to accept, in settlement of an existing or matured claim, a sum or performance other than that to which he believes himself entitled, is an accord. The execution of the agreement is a satisfaction. Although an accord, by itself, has no effect, an accord and satisfaction bars the assertion of the original claim.
 
 
 13
 19 N.Y.Jur.2d Compromise, Accord, and Release Sec. 1, at 296 (1982); see Ber v. Johnson, 163 A.D.2d 817, 558 N.Y.S.2d 350, 351 (App.Div. 4th Dep't 1990) (mem.). Here, May's unconditional negotiation of the check did not meet the requirements of a satisfaction because the performance specified in the Settlement Agreement was conditioned upon the occurrence of several future events. For example, ILC has not yet performed its promise to pay twenty-five percent of the outstanding contract balance remaining after making good faith efforts to work down the balance through the sale of discounted merchandise to May. Accordingly, the district court erred in granting summary judgment for ILC on May's breach of contract claim.
 
 
 14
 On remand, the district court must determine what effect, if any, the Settlement Agreement had on the parties' liabilities in regard to the original sales contract. For example, the Settlement Agreement might be considered an executory accord: " 'an agreement that an existing claim will be discharged in the future by the rendition of a substituted performance.' " National Am. Corp. v. Federal Republic of Nigeria, 448 F.Supp. 622, 643 (S.D.N.Y.1978) (quoting 6 Arthur L. Corbin, Corbin on Contracts Sec. 1269, at 75 (1962) (emphasis added in National American )), aff'd, 597 F.2d 314 (2d Cir.1979); see American Bank & Trust Co. v. Koplik, 87 A.D.2d 351, 451 N.Y.S.2d 426, 428 (App.Div. 1st Dep't 1982), appeal withdrawn, 58 N.Y.2d 1115 (1983); see also N.Y.Gen.Oblig.Law Sec. 15-501(1) (McKinney 1989). The Settlement Agreement also could be construed as a novation: an agreement for an existing obligation to be extinguished immediately by the acceptance of a new promise. See National Am., 448 F.Supp. at 643; American Bank & Trust, 451 N.Y.S.2d at 428. Finally, the Settlement Agreement may have no effect at all on the parties' liabilities under the original sales contract because it is no agreement at all. The ultimate determination will be based on the intentions of the parties--a determination that is best made by the fact finder. See National Am., 448 F.Supp. at 643.
 
 
 15
 In view of the foregoing, we do not determine whether ILC's failure to plead accord and satisfaction as an affirmative defense, see Fed.R.Civ.P. 8(c), was waived when May addressed the defense on the merits in opposing summary judgment. See Dresser Indus., Inc. v. Pyrrhus AG, 936 F.2d 921, 928 (7th Cir.1991).
 
 2. Fraud
 
 16
 The elements of a fraud claim under New York law are "a material, false representation, an intent to defraud thereby, and reasonable reliance on the representation, causing damage to the plaintiff." Katara v. D.E. Jones Commodities, Inc., 835 F.2d 966, 970-71 (2d Cir.1987). In dismissing May's fraud claim, the district court determined that there were material factual disputes concerning all of these elements except the element requiring a causal connection between Frumin's alleged misrepresentation and the economic damage suffered by May. After finding that the existence of an accord and satisfaction discharged ILC from all liability arising from the original underwear contract, the district court held, as a matter of law, that May could not prove damages. Because we are reversing the district court's finding that an accord and satisfaction existed, May's fraud claim is revived and can be pursued on remand.
 
 CONCLUSION
 
 17
 The judgment of the district court is reversed and the case is remanded for further proceedings consistent with the foregoing.