**RED BALL INTERIOR DEMOLITION CORP. and John Palmadessa, Plaintiffs,**

v.

**Daniel PALMADESSA, Donald Palmadessa, William Palmadessa, Supreme Recycling, Inc., and Fortune Interior Dismantling Corp., Defendants.**

**No. 94 Civ. 4158 (RWS).**

United States District Court, S.D. New York.

Jan. 17, 1995.

---

William Dunnegan, New York City, for plaintiff.

Gutman & Gutman, Forest Hills, NY, by S. Mac Gutman, of counsel, for defendant Daniel Palmadessa.

Feldmand, Gold & Wachtel, Roseland, NJ, by Richard Feldman, of counsel, for defendants Donald Palmadessa, William Palmadessa, Supreme Recycling, Inc. and Fortune Interior Dismantling Corp.

*OPINION*

SWEET, District Judge.

Defendants Daniel Palmadessa ("Daniel"), Donald Palmadessa ("Donald"), William Palmadessa ("William"), Supreme Recycling, Inc. ("Supreme") and Fortune Interior Dismantling Corporation ("Fortune") have moved for dismissal of the complaint (the "Complaint") of plaintiffs Red Ball Interior Demolition Corporation, a New York corporation ("Red Ball") and John Palmadessa ("John") pursuant to Rule 12(b)(6) Fed. R.Civ.P. for failure to plead claims upon which relief can be granted and Rule 9(b) Fed.R.Civ.P. for failure to plead fraud with sufficient particularity. Defendants also move for summary judgment pursuant to Rule 56(b) Fed.R.Civ.P. The plaintiffs have moved for summary judgment on their Seventh Claim, for repayment of debts owed to plaintiff corporation by defendants, and on their Eighth Claim, for intentional refusal to repay monies owed.

The defendants have also made a cross-motion which purports to be a motion for summary judgment regarding the Complaint in its entirety, but in fact only addresses plaintiffs' Eighth Claim for relief. For the reasons set forth below, the defendants' motion to dismiss will be granted with respect the RICO and common law fraud claims, partially granted with respect to plaintiffs' claim for breach of fiduciary duty, and denied regarding plaintiffs' other claims. Defendants' motions for summary judgment will be denied, as will plaintiffs'.

### The Parties

Plaintiff John founded the family carting and demolition business, which became Red Ball in 1958, and is presently Red Ball's sole shareholder. Defendant Daniel is John's brother and was his partner in several family businesses, including Red Ball. Daniel's sons, defendants Donald and William were employed by Red Ball and later incorporated Supreme and Fortune.

### Prior Proceedings

John instituted a proceeding seeking the court-ordered dissolution of Red Ball in New York State Supreme Court, on January 30, 1989, alleging fraud and deadlock of directors. That action was dismissed on October 20, 1989.

Daniel then commenced an action for injunctive relief against John in New York State Supreme Court on April 3, 1990. That action was removed to this Court, *Daniel Palmadessa, et al. v. John Palmadessa,* 90 Civ. 2429 (RJW), and John again sought dissolution of Red Ball via a counterclaim in that action. In 1990, pursuant to that litigation and under the supervision of the Honorable Robert J. Ward of this Court, Daniel and John executed an amendment (the "1990 Amendment") to the shareholders' agreement they executed in 1986 (the "1986 Agreement") the terms of which are discussed below. The 1990 Amendment was "so ordered" by Judge Ward.

On August 11, 1992, during the course of the prior litigation, Judge Ward issued an Order (the "August 1992 Order") adjudging Daniel in contempt of Court with regard to the 1990 Amendment for cutting off John's salary. Daniel was ordered to cause Red Ball and the other corporations owned by him and John to pay each of them a salary of $3,000 per week.

John's counterclaim for dissolution in the prior action was ultimately resolved when, on June 2, 1994, John purchased all of Daniel's Red Ball shares, in addition to other assets of Daniel's, for $1.2 million in cash and notes. That action was closed on September 23, 1994. The Complaint in this action was filed four days after John's purchase of Daniel's shares, on June 6, 1994 and is brought by Red Ball, and by John, its sole shareholder, against Daniel, his brother, former partner and shareholder of Red Ball, Daniel's two sons Donald and William, and their corporations, Fortune and Supreme, which operate in lines of business related to that of Red Ball.

The Complaint asserts claims pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(b)–(d) (1984 & Supp.1994) ("RICO") and for wire fraud, 18 U.S.C. § 1343, against all defendants, as well as claims for common law fraud, breach of fiduciary duty, conversion, breach of contract, and repayment for goods and services

wrongfully appropriated against various combinations of the defendants. Plaintiffs assert diversity jurisdiction in addition to their federal question.

Defendants' motion to dismiss and for summary judgment was filed on July 28, 1994. Defendants also filed an Answer on August 5, 1994. Oral argument on defendants' motion to dismiss and for summary judgment was heard on August 24, 1994. Plaintiffs' motion for summary judgment on their Seventh Claim was filed on November 17, 1994 and oral argument was heard on December 14, 1994. Plaintiffs' motion for summary judgment on their Eighth Claim was filed on December 1, 1994 and defendants' cross-motion for summary judgment was filed on December 12, 1994. On December 21, 1994 oral argument was heard regarding plaintiffs' motion for summary judgment on their Eighth Claim and defendants' cross-motion for summary judgment.

### The Factual Allegations [1]

John went into the carting business in 1958. He was later joined by Daniel and they, along with John's wife Mary, became the only shareholders in their first corporation in 1961. John and Daniel formed plaintiff corporation Red Ball in 1967. John and Daniel were Red Ball's only shareholders. Red Ball developed into a successful business.

From the late 1970's through 1986, John did not work full-time due to ill-health but shared equally with Daniel in the proceeds of the business. Daniel ran the financial aspects of Red Ball and its operations were managed by employees. During these years Daniel installed William and Donald, and an employee named Anthony Patrizzio (who was loyal to Daniel rather than John) in key management positions within Red Ball.

From 1986 to 1993 Daniel mailed to John weekly financial statements regarding, *inter alia*, Red Ball's cash position and officers' loan accounts. Daniel also mailed to John Red Ball's annual financial report. These mailings failed to disclose Daniels diversion of Red Ball's resources and business opportunities, discussed below.

In 1986, in view of John's failing health, Daniel and John entered into the 1986 Agreement which required each to secure a life insurance policy on the other in the amount of $3,000,000, with himself as sole beneficiary. In the event of the death of either brother, the 1986 Agreement provided that the surviving brother would immediately pay the entirety of the life insurance proceeds to the deceased brother's estate in consideration for all of the deceased brother's shares of Red Ball. By the terms of the 1986 Agreement sale of the deceased brother's shares by his estate for the $3,000,000 insurance proceeds was mandatory.

At some time prior to November of 1987, Daniel began diverting labor and other assets of Red Ball to the improvement of a farm he owns in West Milford, New Jersey. By November 1987, Daniel had diverted more than $1.7 million from Red Ball to the improvement of his farm.

In 1988 Daniel caused Red Ball to cease paying John's salary, which was his only form of income from Red Ball. Also in 1988 Daniel had Mary, John's wife, ejected from Red Ball's corporate offices when she inquired as to the Red Ball's finances.

For some period of time prior to 1989 William and Donald operated a business known as "Sunset" in competition with Red Ball while still on the Red Ball payroll. Daniel knew of and permitted this activity.

In 1990, as mentioned above, Daniel and John executed the 1990 Amendment under Judge Ward's supervision. That Amendment required that they receive equal regular salary payments from Red Ball, and that, in the event of the death of either brother, sale of the deceased brother's shares in Red Ball would only be at the option of both parties, rather than mandatory, as had been required by the terms of the 1986 Agreement. This amendment gave Daniel an in-

---

1. As is discussed in detail below, in the face of a Rule 12(b)(6) motion to dismiss, a plaintiff's factual allegations are presumed to be true and all factual inferences are drawn in the plaintiff's favor. Therefore, the factual allegations set forth here do not constitute findings of fact by the Court.

centive to reduce, rather than increase the value of Red Ball.

At a meeting and in several telephone conversations late in 1991, Daniel and John discussed the declining financial condition of Red Ball. During this meeting and these conversations Daniel omitted to disclose to John any information about his diversion of Red Ball's resources and business opportunities.

At some time after August 11, 1992 Daniel began to subcontract Red Ball's work to Fortune and Supreme, without John's knowledge, thereby reducing Red Ball's profitability and diverting profitable opportunities to the benefit of his sons alone, without an opportunity for John to share in that benefit.

### Discussion

### I. Legal Standards

#### A. Rule 12(b)(6)

On a Rule 12(b)(6) motion to dismiss, the factual allegations of the complaint are presumed to be true and all factual inferences must be drawn in the plaintiffs' favor and against the defendants. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989); *Dwyer v. Regan*, 777 F.2d 825, 828–29 (2d Cir.1985). Accordingly, the factual allegations set forth and considered herein are taken from the plaintiffs' Complaint and do not constitute findings of fact by the Court. They are presumed to be true only for the purpose of deciding the present motion to dismiss.

Rule 12(b)(6) imposes a substantial burden of proof upon the moving party. A court may not dismiss a complaint unless the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2905–06, 106 L.Ed.2d 195 (1989); *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

In cases in which Rule 12(b)(6) has been applied to claim of a RICO pattern, plaintiffs have been required to allege multiple predicate acts which constitute a pattern of racketeering activity in that they satisfy the requirements of relationship and continuity. *See H.J.*, 492 U.S. at 250, 106 S.Ct. at 2906. A civil RICO plaintiff must establish that defendants "conduct[ed] or participate[d] ... in the conduct of [an] enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Racketeering activity includes a variety of criminal acts, including mail and wire fraud. 18 U.S.C. § 1961(1). The elements of a "pattern of racketeering activity" are not well defined. At a minimum, plaintiffs must demonstrate "at least two acts of racketeering activity" within a ten year period. 18 U.S.C. § 1961(5); *see McLaughlin v. Anderson*, 962 F.2d 187, 190 (2d Cir.1992).

In order to establish standing to undertake a civil action under RICO, it must be shown that plaintiff's harm was proximately caused by the RICO predicate acts alleged, i.e. that there was a direct relationship between plaintiff's injury and the defendant's conduct. *See First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir.1994) (*quoting Standardbred Owners Ass'n v. Roosevelt Raceway Assocs.*, 985 F.2d 102, 104 (2d Cir.1993)); *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir.1990). This requires a showing not only that the defendant's alleged RICO violation was the "but-for" or cause-in-fact of his injury, but also that the violation was the legal or proximate cause. *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, ——— ———, 112 S.Ct. 1311, 1316–18, 117 L.Ed.2d 532 (1992); *Standardbred Owners*, 985 F.2d at 104; *Hecht*, 897 F.2d at 23.

Failure to adequately allege that defendant's RICO predicate acts proximately caused plaintiff's injury is a defect of pleading and is grounds for dismissal at the pleading stage. *See First Nationwide*, 27 F.3d at 769.

#### B. Rule 9(b)

Rule 9(b), Fed.R.Civ.P., requires that in all allegations of fraud, the circumstances constituting the fraud must be stated with

particularity. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1127 (2d Cir.1994); *In re Time Warner, Inc. Sec. Litig.*, 9 F.3d 259, 265 (2d Cir.1993); *Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442, 444–45 (2d Cir.1971). The pleading must be sufficiently particular to serve the three goals of Rule 9(b) which are (1) to provide a defendant with fair notice of the claims against him; (2) to protect a defendant from harm to his reputation or goodwill by unfounded allegations of fraud; and (3) to reduce the number of strike suits. *See Di Vittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987); *O'Brien v. Price Waterhouse*, 740 F.Supp. 276, 279 (S.D.N.Y.1990), *aff'd*, 936 F.2d 674 (2d Cir.1991).

The Court of Appeals has required that allegations of fraud adequately specify the statements made that were false or misleading, give particulars as to the respect in which it is contended that the statements were fraudulent, and state the time and place the statements were made and the identity of the person who made them. *See McLaughlin v. Arthur Anderson*, 962 F.2d 187, 191 (2d Cir.1992); *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989). Further, it is said that in the RICO context, allegations of fraud must indicate what the defendant obtained as a consequence of the fraud. *See Conan Properties v. Mattel, Inc.*, 619 F.Supp. 1167, 1172 (S.D.N.Y.1985); *Todd v. Oppenheimer & Co.*, 78 F.R.D. 415, 420–21 (S.D.N.Y.1978). Finally, the Court of Appeals has held that a complaint charging fraud must assert that defendant possessed an intent to defraud or, at minimum, allege circumstances from which an inference of such intent could be drawn. *See Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), *overruled on other grounds by United States v. Indelicato*, 865 F.2d 1370 (2d Cir.1989).

■ Conclusory allegations of wrongdoing do not satisfy the requirements imposed by Rule 9(b). Some courts have interpreted the Rule to require that the complaint set forth (i) precisely what statements were made in what documents or oral representations or what omissions were made, (ii) the time and place of each such statement or omission and the person responsible for making it, (iii) the content of such statements and the manner in which they misled, and (iv) that which the defendants obtained as a consequence of the fraud. *Todd v. Oppenheimer & Co.*, 78 F.R.D. 415, 420–21 (S.D.N.Y.1978); *see also Savino v. E.F. Hutton & Co.*, 507 F.Supp. 1225, 1232 (S.D.N.Y.1981); *Troyer v. Karcagi*, 476 F.Supp. 1142, 1149 (S.D.N.Y.1979); *Gross v. Diversified Mortgage Inv.*, 431 F.Supp. 1080, 1087 (S.D.N.Y.1977), *aff'd sub nom., Duban v. Diversified Mortgage Inv.*, 636 F.2d 1201 (2d Cir.1980).

■ The plaintiff's complaint must give notice to each defendant of its alleged misconduct. To this end, the complaint may not rely upon blanket references to acts or omissions by all of the defendants, for each defendant named in the complaint is entitled to be appraised of the circumstances surrounding the fraudulent conduct with which he individually stands charged. *Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F.Supp. 518, 522 (S.D.N.Y.1977). This requirement facilitates the preparation of an adequate defense while protecting a defendant's reputation from groundless accusations. *See de Atucha v. Hunt*, 128 F.R.D. 187, 189 (S.D.N.Y.1989), *aff'd*, 979 F.2d 846 (2d Cir.1992); *Posner v. Coopers & Lybrand*, 92 F.R.D. 765, 768 (S.D.N.Y.1981), *aff'd*, 697 F.2d 296 (2d Cir. 1982). It also serves to prevent the abuse of process and the disruption of the gratuitous defendant's normal business activity. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 740–41, 95 S.Ct. 1917, 1927–28, 44 L.Ed.2d 539 (1975).

■ There are five elements necessary to sustain a claim in fraud under New York law: (1) misrepresentation of a material fact; (2) the falsity of that misrepresentation; (3) scienter, or intent to defraud; (4) reasonable reliance on that representation; and (5) damage caused by such reliance. *May Department Stores Co. v. International Leasing Corp.*, 1 F.3d 138, 141 (2d Cir.1993); *Katara v. D.E. Jones Commodities, Inc.*, 835 F.2d 966, 970–71 (2d Cir.1987); *Jo Ann Homes at Bellmore, Inc. v. Dworetz*, 25 N.Y.2d 112, 119, 302 N.Y.S.2d 799, 250 N.E.2d 214 (1969).

## C. *Rule 56*

The Rule 56 motion for summary judgment is "an integral part" of the Federal Rules of Civil Procedure and facilitates the overall purpose of the Rules as stated in Rule 1, namely, "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986). A motion for summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Silver v. City Univ. of New York,* 947 F.2d 1021, 1022 (2d Cir.1991).

The Second Circuit has repeatedly noted that "[a]s a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988) (citing *Celotex v. Catrett,* 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting) and *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)); *see United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Cartier v. Lussier,* 955 F.2d 841, 845 (2d Cir.1992); *Burtnieks v. City of New York,* 716 F.2d 982, 983–84 (2d Cir.1983). If, when "[v]iewing the evidence produced in the light most favorable to the nonmovant ... a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991).

## II. *The Claims*

These various standards are here applied, as required by the parties various motions, to plaintiffs' claims as enumerated in the Complaint.

## A. *Plaintiffs RICO Claim is Dismissed*

 Dismissals for lack of standing may be made pursuant to Fed.R.Civ.P. 12(b)(6). *Thompson v. County of Franklin,* 15 F.3d 245, 247 (2d Cir.1994); *Rent Stabilization Assoc. of New York v. Dinkins,* 5 F.3d 591, 593 (2d Cir.1994); *Ad Hoc Committee of Concerned Teachers v. Greenburgh No. 11 Union Free School Dct.,* 873 F.2d 25, 26 (2d Cir.1989) (upholding district court's dismissal of action pursuant to Rule 12(b)(6) for lack of standing). In the RICO area, standing under § 1964 is an issue appropriate for consideration under Rule 12(b)(6) and the Court of Appeals has upheld dismissal under Rule 12(b)(6) for lack of standing. *Burdick v. American Express Co.,* 865 F.2d 527, 528 (2d Cir.1989).

 It is proper for a district court to dismiss an action for lack of standing, *see National Union of Hospital & Health Care Employees v. Carey,* 557 F.2d 278, 280 (2d Cir.1977), and to do so on its own motion. *Id.* at 282 (Mansfield, J., dissenting). Courts have considered a defendant's attack on a plaintiff's standing under Rule 12(b)(6), *see In re DeFelice,* 77 B.R. 376, 377 (1987), and authority for a *sua sponte* dismissal for lack of standing is also said to reside in Rule 12(h)(3), Fed.R.Civ.P. 12(h)(3), on the theory that standing is a question of subject matter jurisdiction. *See State of New York v. Holiday Inns, Inc.,* No. 83 Civ. 564S, 1992 WL 532169, at *16 (W.D.N.Y. Aug. 28, 1992); *see also Warth v. Seldin* 422 U.S. 490, 498, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975) (noting that standing is a question of federal courts' subject matter jurisdiction); *Page v. Schweiker,* 786 F.2d 150, 153 (2d Cir.1986). Defendants have not raised expressly the question of plaintiffs' standing under RICO, but where lack of subject matter jurisdiction is apparent, courts are required to dismiss the action without regard to whether a motion has been made. *See McLearn v. Cowen & Co.,* 660 F.2d 845, 848 (2d Cir.1981) (Lumbard, J.); *Oppel v. Empire Mutual Ins. Co.,* 92 F.R.D. 494, 496 (S.D.N.Y.1981); *Trinanes v. Schulte,* 311 F.Supp. 812, 813 (S.D.N.Y. 1970); *Amundson v. United States,* 279 F.Supp. 779, 780 (S.D.N.Y.1967); *see also Joyce v. United States,* 474 F.2d 215, 219 (3d Cir.1973) ("Where there is no jurisdiction, there is ... no discretion to ignore that lack of jurisdiction.")

**586**

RICO's civil private right of action is provided by § 1964(c) which confers standing to bring such an action on anyone who he has been injured in his or her business or property by conduct constituting a violation of § 1962 of the statute. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 495, 105 S.Ct. 3275, 3284, 87 L.Ed.2d 346 (1985). Plaintiffs here allege violation of §§ 1962(b), (c) and (d). Further, "the compensable injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern." *Id.* at 496, 105 S.Ct. at 3285. RICO standing may only be founded upon injury from § 1961 predicate acts, and not upon any and all overt acts furthering a RICO conspiracy. *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 25 (2d Cir.1990); *In re Crazy Eddie Sec. Litig.,* 714 F.Supp. 1285, 1291–92 (E.D.N.Y.1989). In *Burdick v. American Express Company,* the Court of Appeals held that the RICO plaintiff in that case was burdened to show that he had been harmed by the § 1961 predicate acts alleged, and looked no further than the plaintiff's complaint to determine that he had not met this burden. 865 F.2d 527, 529 (2d Cir.1989).

Further, the Court of Appeals has made it clear that the predicate acts of the alleged RICO violation must be the proximate cause of the plaintiff's injury, *see, e.g., Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1345 (2d Cir.1994); *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 23–24 (2d Cir.1990) ("standing may be founded only upon injury from overt acts that are also section 1961 predicate acts"); *Miranda v. Ponce,* 948 F.2d 41, 48 (1st Cir.1991) ("For judges, under a conspiracy rubric, to allow RICO damages for an injury caused other than by an enumerated predicate offense would be tantamount to rewriting the statute. Although the Court has stated that Congress intended RICO to be generously construed, *see Sedima,* 473 U.S. at 497, 105 S.Ct. at 3285, there are bounds to interpretive liberality."); *see also County of Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295, 1311 (2d Cir.1990); *Norman v. Niagara Mohawk Power Corp.,* 873 F.2d 634, 636 (2d Cir.1989); *Sperber v. Boesky,* 849 F.2d 60, 64 (2d Cir.1988); *Tribune Co. v. Purcigliotti,* No. 93 Civ. 7222, 1994 WL 642839, at *2, (S.D.N.Y. Nov. 15, 1994).

It must be the *predicate acts* as enumerated in the statute, *see* 18 U.S.C. § 1961(1), which constitute the proximate cause of plaintiff's injury, in order for a plaintiff to have standing under § 1964(c). *See Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, ——, 112 S.Ct. 1311, 1327, 117 L.Ed.2d 532 (1992) (Scalia, J., concurring); *Savine–Rivas v. Farina,* No. 90 Civ. 4335, 1992 WL 193668, *3 (E.D.N.Y. Aug. 4, 1992) (dismissing plaintiff's RICO cause of action because "complaint does not allege that any RICO predicate act was the proximate cause of an injury to business or property").

Those offenses which may serve as predicate acts for a RICO claim are exclusively listed in § 1961. 18 U.S.C. § 1961(1) (1984 & Supp.1994). Only two alleged acts of defendants, of the many asserted in the Complaint, are § 1961 predicate acts. These are mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343.

Having noted that the plaintiffs only have standing to press their RICO claim if the mail and wire frauds they have alleged were the proximate cause of their injury, *see First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 769 (2d Cir.1994), a proximate cause analysis must be applied to plaintiffs' allegations. This inquiry seeks to determine " 'whether the conduct has been so significant and important a cause that the defendant should be held responsible.' " *Brandunburg v. Seidel,* 859 F.2d 1179, 1189 (4th Cir.1988) (*quoting* W. Keeton, et al., Prosser and Keeton on the Law of Torts 272 (5th ed. 1984)). RICO predicate acts are not considered the proximate cause of a plaintiff's injury unless they are "a substantial factor in the sequence of responsible causation," and "the injury is reasonably foreseeable or anticipated as a natural consequence." *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 23–24 (2d Cir.1990). Further, it has been held that in cases in which mail fraud is alleged as a predicate act, plaintiffs must show not only that they relied on fraudulent representations, but that their reliance was

the cause of their injury. *Metromedia v. Fugazy,* 983 F.2d 350, 368 (2d Cir.1992).

■■■ An act which proximately caused an injury is analytically distinct from one which furthered, facilitated, permitted or concealed an injury which happened or could have happened independently of the act. *See Moeller v. Zaccaria,* 831 F.Supp. 1046, 1054 (S.D.N.Y.1993) (finding that fraudulent representations made in interstate mail and telephone communications were not proximate cause where plaintiffs' injury might well have happened without the acts of mail and wire fraud). Injury which results indirectly from the predicate acts does not confer standing under RICO. *See Benedetti v. Nissenbaum,* No. 90 Civ. 7206, 1993 WL 118489, at *3 (S.D.N.Y. April 12, 1993) (Wood, J.). The causal nexus must logically connect plaintiff's injury with defendant's overt § 1961 predicate acts. *See Hecht,* 897 F.2d at 25.

■■■ The Complaint describes interstate mailings which Daniel sent to John containing financial statements and tax returns setting forth the financial condition of Red Ball and interstate telephone conversations in which Daniel made oral representations to John concerning the operation and condition of Red Ball. No specific affirmative misrepresentations are alleged. It is asserted that these mailings and telephone calls were false and misleading because they failed to disclose Daniel's various alleged acts of common law fraud, looting of corporate assets and diversion of corporate resources and opportunities. By the words of the Complaint itself, had the omissions in Daniel's mailings and telephone calls never taken place, John "would have been able to *more effectively* prevent *further* unlawful acts by Daniel." (emphasis added). Taken at face value this statement indicates that plaintiffs were harmed by unlawful acts which occurred irrespective of the omissions in the mailings and the telephone calls. Also, this statement leaves open the possibility that John could have, even in the face of those omissions, prevented some of defendants' alleged unlawful acts. The Complaint thus fails to adequately allege that the omissions were a substantial factor in the causation of plaintiffs' injuries, *Hecht,* 897 F.2d at 23–24, or that

John's reliance on these omissions was the cause of his alleged injury. *Metromedia,* 983 F.2d at 368.

In upholding a 12(b)(6) dismissal of a RICO action predicated on mail and wire fraud, the Court of Appeals noted that dismissal was warranted because "[t]he alleged wire and mail fraud did not *directly* deprive plaintiffs of money or property," thus the proximate cause requirement was unfulfilled. *Sperber v. Boesky,* 849 F.2d 60, 64 (2d Cir. 1988) (emphasis added). Quite similarly in this case, Plaintiffs do not allege that they were *directly* harmed by the predicate mail and wire fraud, only that their ability to discover and/or prevent defendants other wrongful acts was somewhat impaired or limited.

Put simply, plaintiffs asserts that defendants are liable under RICO because Daniel and the other defendants undertook a combination of unlawful and fraudulent activities against John (none of which were themselves violations of federal law), and then Daniel failed to inform John of these activities in their interstate telephone conversations and regular correspondence via the mails. Thus reduced, plaintiffs' RICO claim is obviously beyond the appropriate ambit of RICO.

■■■ Proximate cause analysis under RICO includes normative legal policy considerations. *See Holmes,* 503 U.S. at ——, 112 S.Ct. at 1318; *In re American Express Co. Shareholder Litig.,* 39 F.3d 395, 400–01 (2d Cir.1994); *Hecht,* 897 F.2d at 23; *Sperber,* 849 F.2d at 65. The normative concerns presented here are those of duplicative remedy, excessive deterrence and judicial economy and efficiency. Plaintiffs have recourse to state law for all of the substantive wrongs alleged here. Sound policy counsels against granting the additional relief of RICO where the causal connection between plaintiffs' alleged injury and the acts of the defendant is so remote. Similarly, the high deterrent of treble damages should not be casually applied where state law deterrents are in place and the predicate for their application is so tentative.

■■■ Plaintiffs' references to United States v. Lane and Schmuck v. United

States are irrelevant. The question here is not, as in those cases, whether fraudulent mailings are properly deemed to be "in furtherance" of a scheme to defraud, but rather, whether such mailings are a substantial factor in the causation of the injury to the fraud victim. Omissions such as those Daniel is alleged to have made could well have been made "in furtherance" of a scheme to defraud plaintiffs and still, there would be no set of facts which plaintiffs could prove in which (a) these omissions were a substantial factor in the causation of plaintiffs' injuries or (b) John's reliance on these omissions was a direct cause of plaintiffs' injuries.

For these reasons, the RICO claim will be dismissed.

### B. *Plaintiffs' Second Claim—Common Law Fraud*

 Plaintiffs assert a pendent state common law claim of fraud. As was discussed above, the five necessary elements of a claim of fraud under New York law are: (1) misrepresentation of a material fact; (2) the falsity of that misrepresentation; (3) scienter, or intent to defraud; (4) reasonable reliance on that representation; and (5) damage caused by such reliance. *May Department Stores Co. v. International Leasing Corp.,* 1 F.3d 138, 141 (2d Cir.1993); *Katara v. D.E. Jones Commodities, Inc.,* 835 F.2d 966, 970–71 (2d Cir.1987); *Jo Ann Homes at Bellmore, Inc. v. Dworetz,* 25 N.Y.2d 112, 119, 302 N.Y.S.2d 799, 250 N.E.2d 214 (1969). Allegations that fail to specify the time, place, speaker and, in some cases, the contents of the alleged misrepresentations, lack the "particulars" required by Rule 9(b). *Luce v. Edelstein,* 802 F.2d 49, 54 (2d Cir. 1986). Each assertion in the Complaint which appears to allege an element of fraud is examined for its sufficiency under the standard set out above.

Those statements in the Complaint which allege fraud can be summarized as follows: (i) from 1986 to 1992 Daniel caused the annual financial reports of Red Ball and other jointly held companies, as well as Red Ball's tax returns, to be mailed to John, which

reports and tax returns contained material omissions; (ii) in 1992 and 1993 Daniel caused weekly financial statements of Red Ball ("Recaps") to be mailed to John, which Recaps contained material omissions;[2] and (iii) Daniel had numerous conversations with John in person and via telephone between 1990 and 1993, which conversations contained material omissions. All of the alleged omissions concerned alleged wrongful acts by defendants other than the asserted fraud here in question. No affirmative misstatements are alleged—only Daniel's failure to disclose ongoing or past wrongdoing on his part or that of the other defendants.

 In order to state a claim in fraud, John must show not only that he reasonably believed Daniel's description of the status of Red Ball, including his omissions of material facts, but also that he was justified in taking action in reliance thereon. *See Lanzi v. Brooks,* 54 A.D.2d 1057, 388 N.Y.S.2d 946, 948 (3d Dept.1976), *aff'd,* 43 N.Y.2d 778, 402 N.Y.S.2d 384, 373 N.E.2d 278 (N.Y.1977). John has failed to proffer a credible explanation as to how he could have reasonably relied upon Daniel's alleged material omissions. In fact, as defendants point out, plaintiffs have failed to even allege at all that their reliance was reasonable.

The Complaint and plaintiffs' affidavits in support portray a relationship between John and Daniel that had been deteriorating since 1986. Since that year both brothers saw the necessity of regulating their business relationship with a written Shareholders' Agreement. By 1988 such an atmosphere of mistrust had developed between John and Daniel that Daniel had Mary, John's wife, ejected from Red Ball's offices when she made inquiries about the company's finances. Around that time Daniel also caused John's salary to be cut. In 1989 the first litigation between John and Daniel was commenced, and litigation between them has continued, virtually uninterrupted, ever since.

John's reliance on Daniel's statements as to the financial condition of Red Ball, in view of the history of the his relationship to Daniel

---

**2.** Although the Complaint mentions Recaps from 1986 through 1993, John avers in his sworn declaration that he only remembers Recaps from 1992 and 1993.

as it is described in his own documents, cannot be said to have been reasonable. John's own submissions indicate that he regarded Daniel with skepticism and mistrust and dealt with him at arms' length, in an adversarial manner. It taxes credibility for John to assert that he relied to his detriment on Daniels depictions of Red Ball's affairs. This alone constitutes grounds for dismissal of plaintiffs' common law fraud claim.

■■■■■ An allegation of scienter is necessary for a claim of fraud to be sufficiently pled. *See May Department Stores Co. v. International Leasing Corp.*, 1 F.3d 138, 141 (2d Cir.1993). Although on its face Rule 9(b) permits plaintiffs to make only general averments as to defendant's mental state, plaintiff must, at minimum, allege facts that give rise to a strong inference of fraudulent intent. *See Breard v. Sachnoff & Weaver, Ltd.*, 941 F.2d 142, 144 (2d Cir.1991); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir.1993); *O'Brien*, 936 F.2d at 676; *Ouaknine v. MacFarlane*, 897 F.2d 75, 79 (2d Cir.1990). The requisite strong inference as to fraudulent intent may be established either by factual allegations which show either that defendants had both motive and opportunity to commit fraud or which constitute strong circumstantial evidence of conscious misbehavior or recklessness. *See In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 268–69 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1397, 128 L.Ed.2d 70 (1994); *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir.1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), *overruled on other grounds by United States v. Indelicato*, 865 F.2d 1370 (2d Cir. 1989).

■■■ The only statement in the Second Claim of the Complaint as to Daniel's intent is the following: "Daniel's fraud was intentional, willful and wanton." Noting the conclusory nature of that allegation, attention is paid to paragraphs 1 through 46 of the Complaint, which are incorporated into the Second Claim. Since the fraud alleged is defendant's failure to disclose his own wrongdoing, a search for an allegation of defendant's motive would amount to requiring plaintiff to state in so many words that which is obviously implied. The same is true of an allegation

of opportunity. Defendants had, at all times discussed in the Complaint, the opportunity to confess their alleged wrongs. These allegations with no more, however, hardly give rise to a strong inference of a specific intent on Daniel's part to defraud John and Red Ball by the omissions alleged in the Complaint.

The more telling inquiry in this instance is whether plaintiffs have alleged facts sufficient to constitute strong circumstantial evidence of conscious misbehavior or recklessness. In alleging only that Daniel failed to disclose other past and ongoing wrongs he is said to have committed, they have not. For this and the other above-mentioned reasons, plaintiffs' Second Claim, for common law fraud, does not meet the requirements of Rule 9(b) and will therefore be dismissed.

### C. *Plaintiffs' Third Claim—Breach of Officer's Fiduciary Duty by Daniel*

It is alleged that Daniel breached his fiduciary duty to Red Ball and John—Red Ball's only shareholder other than himself—because he, while an officer and principal shareholder of Red Ball: diverted Red Ball assets for the purpose of improving his property in West Milford, New Jersey; permitted his sons to operate their own businesses (Sunset, Fortune and Supreme) while they were employed by Red Ball; and diverted Red Ball's assets and business opportunities to Fortune and Supreme.

■■■ Regarding Daniel's alleged diversion of Red Ball assets to the improvement of his West Milford property, defendants suggest that plaintiffs must show that they could not have uncovered the alleged diversion "with reasonable diligence." Whatever the applicability of this standard may be to allegations of fraud, it is misplaced in a discussion concerning breach of fiduciary duty. The assertion that Daniel breached his fiduciary duty to Red Ball through the alleged diversion to the improvement of his property is otherwise unchallenged by defendants. Therefore, that element of plaintiffs' Third Claim which addresses Daniel's diversion of corporate resources to the improvement of his West Milford property states a colorable claim and

joins material issues of fact. Neither dismissal under Rule 12(b)(6) nor summary judgment under Rule 56 is appropriate regarding this claim.

■ Plaintiffs allege that Daniel wrongfully permitted his sons William and Donald to conduct their own businesses in competition with Red Ball and that he diverted corporate assets and opportunities to their businesses. It is contended that Daniel was aware of his sons businesses and that he permitted his sons, while still salaried employees of Red Ball, to engage in these businesses.

The claim that Daniel "permitted" his sons to start Fortune and Supreme while still on Red Ball's payroll, with no more, fails to state a claim for which relief can be granted, since no harm came to plaintiffs by virtue of the existence of these businesses in and of themselves. Thus this element of plaintiffs' Third Claim will be dismissed.

■ However, the allegations of diversion of Red Ball equipment, "sweetheart" leasing of Red Ball real estate to Supreme at below-market rates and diversion of Red Ball's business opportunities require closer scrutiny. In opposition to these charges, defendants proffer a terse written agreement, executed by Daniel and John in June of 1993 (the "1993 Agreement"), which, according to defendants, anticipated and approved the diversion of Red Ball's business to Fortune and Supreme. The contractual language which purportedly addresses the conduct of Fortune and Supreme is: "Douglas, Willie and Donald will be free to do whatever they want to do, wherever and however they want to do it." At the very least it cannot be argued that such language, on its face, unequivocally indicates that both John and Daniel anticipated and agreed to the alleged diversion of profitable business opportunities, clandestine transfers of equipment and sweetheart leasing of Red Ball's real estate.

■ Although the mere assertion that Daniel permitted his sons to start their businesses in competition with Red Ball does not state a claim, a colorable claim is lodged by plaintiffs in their allegation that Daniel diverted equipment, real estate and business opportunities from Red Ball to Fortune and Supreme. At least one material issue of fact, regarding the parties intentions as expressed in the contract concerning Fortune and Supreme, has been joined. Neither dismissal nor summary judgment will be granted as to that element of plaintiffs' Third Claim which alleges diversion of resources and business to Fortune and Supreme.

### D. Plaintiffs' Fourth and Fifth Claims—Breach of Employees' Duty of Loyalty and Conversion by Daniel William and Donald

■ Plaintiffs allege that Donald and William, by starting and conducting competing businesses, and Daniel by aiding and abetting them in this conduct, breached a duty of loyalty which they owed to Red Ball as employees. As with plaintiffs' Third Claim, defendants assert the June 1993 Agreement between Daniel and John as grounds for dismissal and/or summary judgment regarding these claims. As was discussed above, it cannot reasonably be maintained that the agreement unequivocally indicates, on its face, the parties' anticipation of and consent to the kinds of actions complained of in this Claim. For that reason, plaintiffs' Fourth and Fifth Claims have lodged colorable claims and have framed at least one triable issue of material fact, i.e. interpretation of the agreement's provision regarding future business endeavors of Daniel's sons. Neither dismissal nor summary judgment can be granted as to these claims.

### E. Plaintiffs' Sixth Claim—Breach of Contract by Daniel

■ In their Sixth Claim plaintiffs assert that Daniel breached that provision of the 1990 Amendment which requires that Red Ball pay Daniel and John equal salaries and afford them equal perquisites. Plaintiffs assert that this contractual provision was breached by Daniel's diversion of Red Ball's assets. Defendants offer no specific challenge to the sufficiency of the pleading of these claims and their submissions suggest only that defendants contest whether Daniel did, in fact, divert Red Ball's resources, either to his property in West Milford, or to

his sons' businesses. Given that this disputed question is both material, and inherently a factual question, neither dismissal nor summary judgment will be granted.

### F. *Plaintiffs' Seventh and Eighth Claims—Payment for Goods and Services and Repayment of Alleged Loans*

These claims are the subject not only of defendants' motions for dismissal and summary judgment, but of the later-filed motions by plaintiffs for summary judgment in their favor. As with Claim Six, defendants offer no specific challenge to the sufficiency of the pleading of these claims, thus dismissal pursuant to Rule 12(b)(6) will not be considered.

Plaintiffs assert in their Seventh Claim that defendants Fortune and Supreme are indebted to Red Ball for goods and services rendered to them. Defendants counter with factual assertions contrary to those of plaintiffs, accompanied by documentary evidence. The actual amount, if any, owed by Fortune or Supreme to Red Ball is a factual issue, and summary judgment will not be granted. Regarding Claim Eight, the parties competing assertions as to the historical meaning of "officer's loans" and "interest" accomplish nothing other than to highlight the material factual dispute presented by this claim. Therefore, both plaintiffs' and defendants' motions for summary judgment will be denied.

### *Conclusion*

For all of the foregoing reasons, defendants' motion to dismiss is granted as to plaintiffs' First Claim (RICO), Second Claim (Common Law Fraud) and that element of plaintiffs' Third Claim (Breach of Fiduciary Duty) which pertains to Daniel's alleged "permitting" or "allowing" his sons to commence and conduct the businesses of Sunset, Fortune and Supreme. In the prospective interest of clarity, it may need be said that the element of plaintiffs' Third Claim which pertains to the alleged diversion of resources and business to Fortune and Supreme is not dismissed, nor is summary judgment granted regarding that element of the Third Claim. Defendants' motion to dismiss is denied with regard to all of plaintiffs' other claims. Defendants' motion for summary judgment are denied. Plaintiffs' motions for summary judgment regarding their Seventh and Eighth Claims are also denied. Plaintiffs are granted leave to replead those claims which have been dismissed.

It is so ordered.