**In re Richard M. & Irene M.
STEDMAN, Debtors.**

**Richard M. & Irene M. Stedman,
Plaintiffs,**

v.

**Roger S. Webb, Patricia G. Webb, and
Florida Silvics, Inc., Defendants.**

**Bankruptcy No. 98–18331 B.
Adversary No. 99–1113 B.**

United States Bankruptcy Court,
W.D. New York.

July 5, 2001.

Damon & Morey LLP, William F. Savino, of counsel, Brian D. Gwitt, of counsel, Buffalo, New York, for Richard & Irene Stedman.

Harter, Secrest & Emery LLP, Raymond L. Fink, of counsel, David G. Reed, of counsel, Buffalo, New York, for Roger & Patricia Webb and Florida Silvics, Inc.

CARL L. BUCKI, Bankruptcy Judge.

On this motion for summary judgment, the central issue is whether a secured creditor may pursue a deficiency claim for the balance due after its liquidation of collateral through a private sale that was commercially unreasonable, in derogation of the requirements of section 9–504 of the Uniform Commercial Code.

Prior to the filing of their bankruptcy petition, Richard and Irene Stedman were owners of a fifty percent interest in Tree Technology Systems, Inc. (hereafter "Tree Technology"). This corporation was engaged in the business of administering pesticides to trees and other shrubbery. Owning the remaining stock of Tree Technology was Patricia G. Webb. Originally, the stock holders contemplated a capital infusion of $200,000, with half to be paid by Patricia Webb and half by the Stedmans. Although Patricia Webb made her contribution, the Stedmans did not advance their share.

In 1991, the Manufacturers and Traders Trust Company ("M & T") extended to Tree Technology a term loan in an original principal amount of $300,000. Additionally, in 1993, M & T granted to Tree Technology a revolving line of credit for $30,000. M & T secured both loans with a blanket security interest in all of Tree Technology's assets, including inventory, accounts, and general intangibles. Patricia Webb, Richard Stedman, and Irene

Stedman each guaranteed personally the obligations to M & T. Finally, as further security for the term loan of $300,000, Mr. and Mrs. Stedman gave to M & T mortgages on various parcels of real property. By at least 1994, Tree Technology began to encounter financial problems. Looking to resolve these difficulties, the corporation appointed Roger S. Webb, the husband of Patricia Webb, to serve as its president. He was unable to reverse the business's losses, however, and Tree Technology defaulted on its loan obligations. As a consequence, in a letter dated February 8, 1995, M & T made demand for payment of $247,504.93, as the balance due for principal, interest and late charges. Liable under her guarantee, Patricia Webb settled with M & T by causing Florida Silvics, Inc. (hereafter "Silvics"), to acquire the secured creditor's position for a consideration of $247,000. Silvics then proceeded to enforce its newly acquired lien against the assets of Tree Technology.

In liquidating the assets of Tree Technology, Silvics attempted a private sale under section 9–504(3) of the New York Uniform Commercial Code. Specifically, Silvics purported to itself acquire all assets of Tree Technology, including inventory, equipment, furnishings and fixtures, for a credit bid of $125,000. Silvics then allocated 87.5 percent of these proceeds to the term loan and the balance to the line of credit. With respect to the term loan, this allocation left an alleged deficiency of $107,338.07, together with interest on that amount from February 21, 1995. To recover this deficiency, Silvics initiated proceedings in September of 1997 to foreclose the collateral mortgages that Richard and Irene Stedman had previously given to M & T, and that M & T had assigned to Silvics.

Mr. & Mrs. Stedman filed a petition for relief under Chapter 13 of the Bankruptcy Code on December 31, 1998, and thereby stayed any further proceedings in the foreclosure action. They then removed the foreclosure to this court, and initiated the present adversary proceeding to determine the causes of action that had been removed. Previously, this court denied the motion of Silvics and of Roger and Patricia Webb to remand the matter to state court or to abstain. Now, at this time, Richard and Irene Stedman have moved for summary judgment. They contend that the method for liquidating the assets of Tree Technology was not commercially reasonable, and that therefore, Silvics is not entitled to recover a deficiency through enforcement of the Stedmans' guarantee or from any collateral that provides security for that guarantee.

■ Section 9–504(3) of the New York Uniform Commercial Code includes the provision that a "secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale." After oral argument on the debtors' motion, this court ruled that because the collateral had no recognized market and no standard price quotation, the purchase by Silvics at a private sale was commercially unreasonable. What remains for decision is whether the secured creditor is thereby precluded from recovery of a deficiency.

■ The Uniform Commercial Code is a state statute, and as such, is to be regarded as a rule of decision in civil actions. *See* 28 U.S.C. § 1652. In giving interpretation to its unsettled provisions, this court is obliged "in every case to ascertain from all the available data what the state law is and apply it . . . ." *West v. American Telephone & Telegraph Company,* 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940). Accordingly, in their

application of state statutes, federal courts must follow the decisions of the state's highest court. Where no such authority exists, this court "must do its best to guess how the state court of last resort would decide the issue." *In re Brooklyn Navy Yard Asbestos Litigation*, 971 F.2d 831, 850 (2nd Cir.1992). In making such a prediction, "the best indicators ... are often the decisions of lower state courts." *Id.*

The parties cite no decision of the New York Court of Appeals [1] which has spoken to the award of a deficiency judgment after a commercially unreasonable sale of collateral. Nonetheless, based upon both the clear language of the statute and the decisions of New York's intermediate appellate court, this court is satisfied that the Court of Appeals would allow a deficiency, subject to offset for damages resulting from inadequacies of sale methodology.

Section 9–504(2) of the New York Uniform Commercial Code establishes the basic standard: "If the security interest secures an indebtedness, the secured party must account to the debtor for any surplus, and, unless otherwise agreed, the debtor is liable for any deficiency." By the language of section 9–504(2), this liability for a deficiency is without condition. In the present instance, the defect of sale methodology relates to the requirements of UCC § 9–504(3). Although this subdivision itself imposes no penalties for noncompliance, a violation of its requirements will impose liability under UCC § 9–507(1). This section states that if the sale of collateral has occurred, the debtor "has a right to recover from the secured party any loss caused by a failure to comply with the provisions" of part 5 of Article 9. Thus,

the statutory language appears to allow Silvics to recover a deficiency, subject only to an offset for damages resulting from the commercial unreasonableness of its methodology of sale. While this interpretation seems obvious to this court, counsel for the Webbs has cited various decisions as authority for a more stringent standard.

Among the departments of the Appellate Division, only the Fourth has issued a full opinion on the right to a deficiency after a commercially unreasonable sale of collateral. In *Security Trust v. Thomas*, 59 A.D.2d 242, 399 N.Y.S.2d 511 (1977), the court found the Uniform Commercial Code to be silent about the recovery of a deficiency in this circumstance. Writing for the unanimous panel, Judge Witmer reviewed the holdings of courts in other jurisdictions, and divided the cases into three categories. The first were those cases which hold that a commercially unreasonable sale operates to bar a deficiency judgment. Second were decisions holding that "the debtor may recover from the secured party any loss caused by the latter's failure, but cannot bar the creditor's action for deficiency judgment." *Id.* at 245, 399 N.Y.S.2d 511. For itself, the Fourth Department chose to follow a third group of cases that adopted "a middle ground," which holds that despite any failure to conduct a commercially reasonable sale, "the creditor may still recover a deficiency judgment against the debtor, except that in such cases the secured creditor must prove the amount of his deficiency and that the fair value of the security was less than the amount of the debt." *Id.* at 246, 399 N.Y.S.2d 511.

In my view, the second and third categories of cases are essentially identical ex-

1. For nearly all matters, the highest court in New York is the Court of Appeals. The New York Supreme Court is a court with general trial jurisdiction. The court with intermediate appellate authority is the Appellate Division of the Supreme Court. The Appellate Division is divided geographically into four departments.

cept as to the burden of proof. From a commercially unreasonable sale, the only likely damage is the failure to realize the fair value of the collateral. In the second group of cases that Judge Witmer identified, the debtor may establish such loss. In the third group, because such loss is presumed for an amount that is at least equal to the deficiency, "the secured party has the burden of proof" to establish the collateral's fair value. *Id.* at 246, 399 N.Y.S.2d 511. In either instance, the creditor enjoys the possibility of a deficiency judgment, but subject to offset for either a presumed or demonstrated loss for value not realized upon the commercially unreasonable sale.

In five other cases, the Appellate Division of the New York Supreme Court has issued memoranda which considered a secured creditor's rights under UCC § 9–504(2) to recover the deficiency that resulted from a commercially unreasonable sale of collateral. In *General Electric Credit Corp. v. Durante Bros. & Sons, Inc.,* 79 A.D.2d 509, 433 N.Y.S.2d 574 (1980), the First Department adopted the holding of the Fourth Department in *Security Trust v. Thomas.* The Fourth Department itself followed its prior ruling, when it issued a memorandum decision in *Telmark, Inc. v. Lavigne,* 124 A.D.2d 1055, 508 N.Y.S.2d 737 (1986). Consistent with these results was the holding of the Third Department in *Stanchi v. Kemp,* 48 A.D.2d 973, 370 N.Y.S.2d 26 (1975). Although the court remanded the case without addressing the burden of proof, it agreed that "the failure of plaintiff to comply with the provisions of subdivision (3) of section 9–504 of the code would not discharge the defendant from all liability under the contract." *Id.* at 974, 370 N.Y.S.2d 26. Contending nonetheless that the law of New York is unsettled, the Stedmans urge reliance upon the memorandum of the Second Department in *Central Budget Corp. v. Garrett,* 48 A.D.2d 825, 368 N.Y.S.2d 268 (1975), and the Fourth Department's memorandum in *Liberty Bank v. Thomas,* 222 A.D.2d 1019, 635 N.Y.S.2d 912 (1995). In the view of this court, however, these cases are fully compatible with the allowance of a deficiency in the present instance.

In *Central Budget Corp. v. Garrett,* a used car dealer had sold to Garrett a Buick automobile for a purchase price of $1,627.50. In financing this purchase, the parties executed a retail installment sales contract stating a total time balance of $2,225.04. The dealer then sold the contract to Central Budget Corporation at a discounted price of $1,300. Garrett made one payment and then defaulted. Within three months of Garrett's purchase, Central Budget Corporation repossessed the car. An auctioneer then sold the automobile to a successor of the original dealer, for a consideration of $300. The Appellate Division held that *"[u]nder these circumstances,* we require some affirmative showing that the terms of the disposition were, in fact, commercially reasonable and hold that, in the absence of such a showing, we will be compelled to deny recovery in a suit for a deficiency judgment pursuant to subdivision (2) of section 9–504 of the code." 48 A.D.2d at 826, 368 N.Y.S.2d 268 (emphasis added). Thus, the denial of a deficiency judgment was compelled by the particular circumstances of the case. In negotiating the terms of the purchase contract, the seller had agreed to a value more than 500 percent greater than the price that an affiliated agency paid only a few weeks later at the auction sale. The decision may be seen as holding only that when a purchase money secured creditor conducts an immediate but commercially unreasonable sale of consumer goods, the collateral will be presumed to retain a value at least equal to the underlying obligation. In the view of this court, the

outcome in *Central Budget Corp.* was intended to apply only to its special circumstances and not generally in all commercial contexts.

Finally, Silvics argues that in *Liberty Bank v. Thomas,* 222 A.D.2d 1019, 635 N.Y.S.2d 912 (1995), the Fourth Department impliedly overruled its previous adoption of a rebuttable presumption standard for the allowance of a deficiency judgment. In this short memorandum, the court affirmed a judgment denying a deficiency and awarding damages on the obligor's counterclaim. Silvics specifically relies on the language of the Fourth Department that despite other errors, a reversal of the denial of a deficiency was not required "because a fair interpretation of the evidence supports the court's determinations that plaintiff failed to give defendant the required notice of the sale of the automobile." *Id.* at 1019, 635 N.Y.S.2d 912. Factually, however, the possibility of a deficiency was incompatible with the award of affirmative damages to the debtor. It appears, therefore, that the quoted text served not to preclude any deficiency as a matter of law, but rather only to bolster the factual conclusion that no deficiency occurred.

This court accepts the holding in *Security Trust v. Thomas,* 59 A.D.2d 242, 399 N.Y.S.2d 511 (1977) as the most reliable statement of New York law on the allowance of a deficiency judgment upon a commercially unreasonable sale of collateral. *Accord, In re Winer,* 39 B.R. 504 (Bankr. S.D.N.Y., 1984). When scrutinized, the other decisions of New York's intermediate appellate court are consistent with its essential holding, that secured creditors are not barred from establishing their entitlement to recovery of a deficiency. Further, my own reading of sections 9–504(2), 9–504(3), and 9–507(1) of the Uniform Commercial Code indicates a similar re-

sult. For all these reasons, this court is satisfied that if asked to consider the question, the highest court of New York would rule that even upon a commercially unreasonable sale of collateral, a secured creditor may recover a deficiency, subject to offset for such damages resulting from the commercial unreasonableness of its methodology for sale of the collateral. As to proof of deficiency and offset, *Security Trust v. Thomas* teaches that upon a commercially unreasonable sale, the secured creditor carries the burden to show both the amount of deficiency and that the debt exceeds the fair value of the security. Such issues of proof will be considered at trial. As to the present motion of Richard and Irene Stedman, summary judgment is denied.

So ordered.